IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| M.R. CHRISTONSON, et al., | ) | |
| | ) | |
| | ) | CASE  No. 1:05-CV-00145-MHW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| UNITED STATES OF AMERICA, et al., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiffs filed their voluminous First Amended Complaint *pro se* ("Complaint") against a litany of defendants, including several appellate, district and magistrate judges sitting in the District of Utah and the Tenth Circuit Court of Appeals, Senator Orrin Hatch, and various title insurance companies, law firms, as well as other private defendants (collectively "Defendants"). The Complaint alleges causes of action ranging from civil rights claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) to violations of the Federal Tort Claims Act, 28 U.S.C. § 2680(a) and the Racketeer Influenced and Corrupt

Organizations Act (RICO), 18 U.S.C. § 1601, *et seq.* to state law tort claims.  Each group of

Defendants has filed a motion to dismiss, all of which are currently pending before the Court.[1]


# I.
## Background

This case stands in a series of cases filed by Holli Lundahl ("Lundahl") and other

plaintiffs (collectively "Plaintiffs") that relate to Lundahl's purchase of land in Temecula,

California in 1991 and its subsequent foreclosure in 1994.  In the decade that followed the

foreclosure, Ms. Lundahl instituted several cases in state and federal courts in California, Utah,

Wyoming, and Idaho, against various persons, governmental entities, judges, lawyers, title

companies, and insurance companies.  These parties have been required to defend themselves in

these actions, expending tremendous resources, including all of the attendant attorney fees and

costs, as well as the expenditure of their time.  From the record before this Court, it is apparent

that Ms. Lundahl has used the state and federal judicial systems to terrorize those she perceives

to have conspired against her.

Lundahl purchased the California property with the intention of building a "showroom

for state of the art physical therapy equipment" and to install steel storage facilities that would

"house" the physical therapy equipment and other medical supplies until it could be distributed

to various medical vendors.  Plaintiffs assert they also intended to build a 25,000 square foot

---

[1] For purposes of expediency, the Court will accept Ms. Lundahl's representations that Plaintiff Christian Lundahl assigned all his claims to her despite Ms. Lundahl's apparent pattern of convincing others to assign their claims to her and then representing those claims in her own right.  *See Lundahl v. Quinn*, 67 P.3d 1000, 1002 (Utah 2003) ("We also note Holli has occasionally employed the right to self-representation in a questionable manner.  In this petition, as well as in at least three other recent appellate filings, Holli has purportedly acquired another person's cause of action by assignment and then has professed to represent that cause of action in her own right.")

veterinary clinic to service the "equestrian 'thoroughbred' estates surrounding the 'high end'

commercial property." *Id.* During the interim period while Lundahl attempted to launch her

new business venture, Lundahl placed a motor home on the property, which she and others

occupied at different times.

Plaintiffs allege that Paula Compton, the mother of Defendant Jeffrey Compton

("Compton"), held the deed of trust to the California property in the amount of $101,000 when

the property was purchased. According to Plaintiffs, Lundahl paid $81,500 on the note. In

1992, Jeffrey Compton became the holder of the deed of trust. Plaintiffs allege that a dispute

arose between Paula Compton and Lundahl as to the amount remaining on the note; the dispute

was allegedly resolved in Lundahl's favor after a state court proceeding. Plaintiffs further assert

that Jeffrey Compton became enraged after the Court issued an order in Lundahl's favor

"because of [Jeffrey Compton's] scheme to steal the improved property by unlawful

foreclosure." (Complaint, ¶ 15). Plaintiffs assert Compton's rage caused him to "wield[] a

shotgun and commence[] shooting at the storage facilities thus far erected, the electrical lines

and the gas tank to the expensive 40 foot motor home" on July 18, 1993. (Complaint, ¶ 15). As a

result of the damage caused by the alleged shooting incident, Holli and Christian Lundahl

supposedly filed insurance claims with their carriers, asking for reimbursement costs for the

property damage and for legal representation to "go after" Jeffrey Compton. These claims were

denied.

In response, to Plaintiffs' allegations, Compton maintains that he was skeet shooting

when his bullets hit the motor home. Compton further alleges Lundahl failed to pay the state

property taxes on the California property for nearly five years and that Lundahl was also several

months behind in her payments to Compton.  Compton apparently paid the delinquent property taxes rather than allowing the property to be sold by the state to satisfy the tax liability. Compton requested that Lundahl become current on her debt, but Lundahl allegedly failed to make the payments.  After Lundahl's allegedly repeated failure to make payments, Compton instructed his attorney, Defendant Stephen Wheeler ("Wheeler"), to foreclose on the property. In compliance with this request, Wheeler arranged a public trustees sale that was held on October 17, 1994.  Lundahl and the other plaintiffs claim the non-judicial foreclosure was improper and amounted to the "theft" of Lundahl's property.  And so the litigation campaign began.

Before the sale was effectuated in 1994, it is the Court's understanding that Lundahl filed her first case in a California state court against Compton and a variety of other defendants, including the County of Riverside.  Specifically, Lundahl sought relief for alleged RICO violations, assault, battery, and fraud.  Lundahl also sought to enjoin the pending foreclosure proceedings that had been initiated against the California property.  The California state court found that the property had been transferred to a bona fide purchaser, and thus denied as moot the motion for an injunction.  The entire action was dismissed without prejudice.  Lundahl appealed the decision to the appellate court, which affirmed the lower court's decision.

In order to recover money damages for the purportedly wrongful foreclosure by the Compton and Wheeler Defendants and to recover compensation from the various insurance companies for failure to provide coverage for these claims,  Plaintiffs filed an action in the U.S. District Court for the Central District of California against a variety of defendants including the insurance companies, a pharmaceutical company, and other private and public entities, alleging

**Memorandum Decision and Order - Page 4**

the defendants were engaged in a massive conspiracy against them.  The complaint included claims for fraudulent conveyance, malicious prosecution, fiduciary fraud, abuse of process, breach of implied covenant of good faith and fair dealing, and malicious interference with contract and prospective economic advantage.  This action was dismissed without prejudice in December of 1998.

The fact the California cases had been dismissed did not deter Lundahl and the other Plaintiffs.  On January 14, 1999, Plaintiffs re-filed their complaint in the U.S. District Court for the District of Utah, asserting essentially the same claims that had been raised in California.  Lundahl and the Utah plaintiffs also included allegations that numerous California state officials, in collusion with several private individuals and entities, had unfairly  and in violation of their rights, thwarted their previous litigation efforts in California.  On October 19, 2001, the Utah case was dismissed.  Plaintiffs' Motion for Reconsideration was summarily denied on November 26, 2001.

Failing yet again at the district court level, Lundahl and the Utah plaintiffs appealed the decision to the United States Court of Appeals for the Tenth Circuit.  Each Utah plaintiff attempted to filed a separate brief.  In response, the Tenth Circuit ordered Plaintiffs to file a joint brief limited to 30 pages.  On July 16, 2002, the Tenth Circuit Court of Appeals dismissed the Utah plaintiffs' appeal for failure to prosecute, but allowed the plaintiffs to re-instate their appeal if an amended joint brief limited to 30 pages accompanied the petition to reinstate the appeal.[2]

---

[2] The Tenth Circuit has deemed Lundahl a vexatious litigant and filing restrictions were imposed.  The Tenth Circuit does not stand alone in its imposition of filing restrictions against Lundahl–the Utah Supreme Court, the United States District Court for the District of Utah, the United States Court of Appeals for the Ninth Circuit, the United States Court of Appeals for the Tenth Circuit, and the United States Supreme Court each have entered an order imposing various pre-filing restrictions against Lundahl.  The United States District of Idaho denied Lundahl's motion to proceed in forma pauperis.

Instead, the Utah plaintiffs filed a petition for writ of certiorari to the United States Supreme Court, which was denied on May 5, 2003.

Their claims rejected in all of these courts, Plaintiffs, with Lundahl as their apparent leader, turned to Idaho and the District of Wyoming, filing claims alleging RICO violations, unlawful debt collection practices, abuse of process, fiduciary fraud, breach of covenant of good faith and fair dealing, unlawful business practices, defamation, tortious interference with prospective contracts, economic advantage, and business relations, and pre and post-judgment interest.  The complaint filed on April 15, 2005 in the United States District Court, District of Wyoming, Case No. CIV 05-00118-WFD was dismissed after Lundahl failed to pay her filing fee.  As Lundahl paid her filing fee in the present case, the Court is confronted with nine motions to dismiss.[3]  With this as the background, the Court will turn to the various motions pending before the Court.

## II.
### Standard of Review

Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Branch v. Tunnel*, 14 F.3d 449, 453 (9th Cir. 1993), *cert. denied*, 114 S.Ct. 2704 (1994).  Furthermore, if a Rule 12(b)(6) motion raises "matters outside the pleading" and these matters are "presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  *Id.* at 453.  In this instance, numerous affidavits and declarations have been filed in support or opposition to the motions to dismiss.  Therefore, the Court will treat Defendants' motions to dismiss as motions for summary judgment.

---

[3]In addition, numerous motions to strike and motions for extensions of time have been filed.

**Memorandum Decision and Order - Page 6**

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1993). A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not enough for the [non-moving] party to "rest on mere allegations of denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.,* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.,* at 249-250. "The mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendants]." *Id.*

The Ninth Circuit has consistently applied the standard for granting summary judgment. *Musick v. Burke,* 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank,* 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe,* 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach,* 662 F.2d 584 (1981).

## III.
## Discussion

It seems patently clear from Plaintiffs' Complaint and Plaintiffs' subsequent filings with the Court that Plaintiffs have filed this claim in the District of Idaho in order to circumvent prior judicial determinations made in both the California and Utah courts. The overarching theme of Plaintiffs' claims against the multitude of Defendants is that each one of them has conspired against Lundahl and/or her co-Plaintiffs in the "theft" of this California property. Some of the Defendants were allegedly directly connected to the California property and were part of the alleged conspiracy to "steal" the property since its inception, while the other Defendants only became alleged co-conspirators as Lundahl, with the other Plaintiffs, began their march through the judicial system to remedy this perceived wrong. Plaintiffs assert that those Defendants subsequently added to the list after Plaintiffs' first attempt in the California state courts to recover the purportedly stolen property participated in a scheme with the original Defendants to frustrate Plaintiffs' efforts to recover money damages for the loss of that property, using the judicial system as a criminal enterprise. According to Plaintiffs, this conspiracy to steal Lundahl's property not only came to involve the lawyers representing the original Defendants in

**Memorandum Decision and Order - Page 8**

the initial California action, but also reached into the judiciary itself and includes trial and appellate judges who adjudicated Plaintiffs' past claims, as well as Congressman Chris Cannon and Senator Orrin Hatch, legislators who presumably failed to heed Plaintiffs' cries against the corrupt judicial system.

Under Ms. Lundahl's and the other Plaintiffs' view of the law, if they are dissatisfied with the decision in the state or federal court, then they merely have to change the caption of their complaint, gather up the necessary filling fee and march into another state of federal court in another jurisdiction and start the process anew.   However, Plaintiffs may not file a claim in the District of Idaho to collaterally attack legitimate and binding judicial decisions in our sister courts.  While Plaintiffs claim to "know" the law, in reality, Plaintiffs have continually asked the courts to ignore well-settled rules and the basic tenets of jurisdiction and venue so as to accommodate Plaintiffs' grievances, and when the courts do not comply, Plaintiffs cry "conspiracy!"  Yet, it is Plaintiffs who have abused the system, not the system that has abused them.  The Court finds no merit to Plaintiffs' claims and will grant each Defendant's motion to dismiss.

### A. Motions to Dismiss–CNA, PAYCO, First American, and Lawyer's Title

Plaintiffs contend that there are two distinct groups of events giving rise to Plaintiffs' supposed causes of action.  The first group comprises those events relating to the California property that gave rise to the California and Utah litigations in the early to mid-1990s.  The second group of events relate to the various Defendants' apparent misuse of the judicial process to hinder Plaintiffs' ability to have their cases heard.

Those claims against Defendants Continental Insurance Company, CNA Financial Corporation and Loews Corporation (collectively referred to as "CNA"),[4] Defendant PAYCO General American Credits ("PAYCO"), Defendant First American Title Insurance Co. ("First American), and Defendant Lawyers Title Insurance ("Lawyer's Title"), erroneously sued in this action as "Continental Land title aka [Continental] Lawyers Title Insurance Company and Continental Insurance Company[5] arising from the first set of events are hereby dismissed under the doctrines of *res judicata*.

Res judicata applies when "the earlier suit... (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical

---

[4]CNA Defendants were erroneously sued as Continental Land Title AKA Continental Lawyers Title Insurance Company and Continental Insurance Company and Continental Guaranty and Credit and Payco General American Credits–All Merged Corporation Parties to CNA Financial Corporation aka Lowes (Loews) Companies, Inc.  According to CNA:

> "The name "CNA Insurance" is not the name of a legal entity, but is a fleet name that refers to a group of independent insurance companies.  The Continental Insurance Company is one of the many entities that is authorized to use the fleet name "CNA Insurance Company."  CBA Financial Corporation is a holding company that owns stock in various companies that are authorized to use the CNA Insurance fleet name.  It is understood that Loews Corporation has been or is currently a shareholder of various CNA entities.  The other various corporate entities named by Plaintiffs as "merged corporation parties" do not have any corporate affiliation with CNA Financial Corporation, Continental Insurance Company or Loews Corporation, and thus have not been properly served in this matter."

For the sake of expediency and for the purposes of this motion only, the CNA Defendants have agreed to accept the statements made by Plaintiffs that the named entities are all entities operating under the name of CNA Insurance as true and collectively refer to the group as "CNA."

In addition, Plaintiffs seem to include Defendant PAYCO General American Credits within the group of Defendants referred to as the CNA Defendants in the First Amended Complaint.  PAYCO accepted Plaintiffs' assertions of corporate affiliation between PAYCO and CNA as true only for the purposes of this dismissal action.  Thus, PAYCO incorporates CNA's background and statement of facts in their Memorandum in Support of its Motion to Dismiss.  PAYCO also relies on many of the same legal arguments as the basis for its dismissal.  Accordingly, the Court will treat PAYCO as part of the group of Defendants referred to as the CNA Defendants.

[5]Lawyer's Title move to dismiss these claims on the basis that venue is improper.  Because the Court grants Lawyer's Title's Motion to Dismiss on other grounds, it will not directly address this argument.  However, if the Court found it necessary to reach the question of venue, it would find that venue is not proper in the District of Idaho, as none of the alleged wrongs occurred in Idaho.

**Memorandum Decision and Order - Page 10**

parties or privies." *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002).  The Ninth Circuit requires that a district court consider four criteria to determine whether the two suits involve the same claim or cause of action, which the court are not to apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003).

The Ninth Circuit uses a transaction test to determine whether the two suits share a common nucleus of operative fact. *Int'l Union v. Karr*, 994 F.2d 1426, 1429-30 (9th Cir. 1993). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citing Restatement (Second) Judgments § 24(2) (1982)).  Often the Ninth Circuit has held the common nucleus criterion to be determinative of the outcome under the first res judicata element. *E.g., Int'l Union*, 994 F.2d at 1429-30 (holding criterion to be outcome determinative and listing cases using the same nucleus of operative fact as the exclusive factor to bar a second claim under res judicata).

There is little doubt that Plaintiffs' present claims against the above-named Defendants stemming from the early to mid-1990s relating to the foreclosure of the California property that occurred in 1994 are claims which have been previously adjudicated in both California and Utah. In March of 1997, Plaintiffs brought an action in the Central District of California alleging substantially the same causes of action as pled in the present matter.  This case was heard on its

merits and dismissed without prejudice in December 1998.  This did not deter Plaintiffs from

filing essentially the same causes of action in the Central District of Utah where their complaint

was dismissed with prejudice.  Plaintiffs filed a motion to reconsider, which was denied.

Plaintiffs appealed the decision to the Tenth Circuit Court of Appeals.  The appeal was dismissed

for failure to prosecute and Plaintiffs filed a petition for writ of certiorari to the United States

Supreme Court, which was denied on May 5, 2003.  The Defendants to this action should not be

forced to expend more time and money defending against these same claims and issues.

Plaintiffs' second series of claims are based on events that would not be barred by *res

judicata*, i.e., that a massive RICO conspiracy existed in the federal Utah judicial system and the

Tenth Circuit Court of Appeals.  However, these claims are barred by the judicial proceedings

privilege.  In California and Utah, an "absolute privilege attaches to any publication that has any

reasonable relation to the action and is permitted by law if made to achieve the objects of

litigation, even thought the publication is made outside the courtroom and no function of the

court or its officers is invoked. *Rader v. Thrasher,* 22 Cal.App.3d  883, 887 (Cal.Ct.App. 1972);

*accord Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997); *Beezley v. Hansen*, 286 P.2d 1057,

1058 (1955); *see also Krouse v. Bower*, 20 P.3d 895, 898-99 (Utah 2001).  The absolute

privilege applies to judges, jurors, attorneys, parties, witnesses and any others involved in the

litigation.  *Kachig v. Boothe*, 22 Cal.App.3d 626, 641 (Cal.Ct.App. 1971); *see also Price*, 949

P.2d at 1256.  This privilege is not limited to defamation claims; rather, it extends "to all claims

arising from the same statements." *Bennett v. Jones*, *Waldo, Holbrook & McDonough*, 2003 UT

9, ¶ 67, 70 P.3d 17 (Utah 2003)(citations omitted.).  Furthermore, the Ninth Circuit has noted

that RICO was not intended to circumvent judicial immunity even when the allegations involve

general allegations of conspiracy. *Franklin v. Terr*, 201 F.2d 1098, 1102 (9th Cir. 2000).

Plaintiffs have alleged the various Defendants have committed abuse of process and

made fraudulent statements to courts in California and Utah in arguing that Plaintiffs' claims

were barred by the statute of limitations.  However, any legal arguments made by Defendants or

their representatives are absolutely protected by the judicial proceedings privilege.  Accordingly,

the Court will dismiss all of Plaintiffs' claims based upon allegations against the above-named

Defendants that they filed fraudulent pleadings and made fraudulent representations as part of a

larger RICO conspiracy during the course of any judicial proceedings.

### B. Strong & Hanni Defendants, Compton and Wheeler Defendants

The Court lacks jurisdiction over Defendant Strong & Hanni, three of its attorneys,

Defendants Stephen Trayner, Steve Densley, and Darren Nelson (collectively "Strong & Hanni

Defendants"), as well as Defendant Stephen Wheeler and Defendants Jeffery Compton, Jeffery

B. Compton and Lisa Compton as Trustees to Revocable Living Trust of Jeffrey B. Compton and

Lisa F. Compton, Jeffrey B. Compton and Associates, L.P., Warm Springs Village, L.P.,

International Office Space, L.P., International Office Space II., L.P., Blair Investment

Corporation, L.P. and Administrator of the Estate of Paula Compton (collectively "Compton

Defendants).

The Court has personal jurisdiction over these Defendants only to the extent permissible

by the United States Constitution.  A state may constitutionally exercise personal jurisdiction

over nonresidents who have "sufficient minimum contacts" with the forum such that

"maintenance of the suit does not offend 'traditional notions of fair play and substantial justice."

**Memorandum Decision and Order - Page 13**

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  On one end of the jurisdictional spectrum, a defendant may be subject to "general in personam jurisdiction"– meaning the court may exercise jurisdiction over the defendant for all claims – if  his or her instate contacts are "systematic and continuous." *Helicopeteros Nacionales de Colombia v. Hall,* 466 U.S. 408 (1984).  On the other end of the jurisdictional spectrum, if the contacts are not substantial enough to warrant general jurisdiction, a court's jurisdiction will be limited to claims related to the defendant's instate activities. *Id.*

It is clear that the Court may not exercise general jurisdiction over the above-named Defendants.  It is undisputed that none of these Defendants are citizens of the state of Idaho, and Plaintiffs have otherwise failed to make a prima facie showing that any of these Defendants have had contacts with the state of Idaho that could be appropriately characterized as "systematic and continuous."  Thus, the Court may not exercise general jurisdiction over the Strong & Hanni Defendants, Wheeler, or the Compton Defendants.

Nor may the Court exercise specific jurisdiction over these same Defendants.  The Ninth Circuit applies a three-part test to evaluate the nature and quality of defendants' contacts for purposes of specific jurisdiction:

> 1) defendant must take some action whereby he or she purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> 2) the claim must be one which arises out of or relates to the defendant's forum-related activities.
> 3) the exercise of jurisdiction must be reasonable.

*Brand v. Menlove Dodge*, 796 F.2d 1070, 1072 (9th Cir. 1986).  Again, Plaintiffs have failed to show that the Strong & Hanni Defendants, Wheeler, or the Compton Defendants have purposefully availed themselves of the privilege of conducting activities in Idaho.  Nor do any of

the claims arise out of the Defendants' forum related activities.  Thus, the exercise of specific

jurisdiction would not be reasonable.

However, if the Court assumes it has jurisdiction over these Defendants, the judicial

proceedings privilege also protects the Strong & Hanni Defendants against whom Plaintiffs have

filed claims alleging the Strong & Hanni Defendants "falsely represented that plaintiff's claim

were [sic] time barred and that plaintiffs had no standing to pursue assigned claims."

(Complaint, ¶ 63).  Plaintiffs also assert that "Defendant Attorney Darren Nelson of the law

offices of Strong and Hanni made these false representations to the Utah federal court" and

Attorney Stephen Trayner filed a "false" motion to dismiss on behalf of the CNA Defendants.

*Id.*  Even if Plaintiffs' allegations are taken as true, they have still failed to state a claim upon

which relief may be granted because any representations the Strong & Hanni Defendants made

in court are privileged. Furthermore, any claims against the Compton Defendants and Wheeler

would be barred by the doctrine of *res judicata* as discussed with respect to CNA, PAYCO, First

American, and Lawyer's Title.

### C. Federal Defendants

In addition to the private entities against whom Plaintiffs have filed their Complaint,

Plaintiffs have alleged claims against the United States and its federal officials, including Utah

Senator Orrin Hatch, Congressman Chris Cannon, three Tenth Circuit Court of Appeals Judges,

a Utah Federal District Court Judge, a Utah United States Magistrate Judge, a Utah United States

District Court Clerk, and a Tenth Circuit Court of Appeals Clerk.  The Court will refer to the

individual federal defendants as "the federal officials" and the Court will refer to the federal

judges and clerks as "the federal judicial officials."  Plaintiffs allege a claim against the United

States under the FTCA, and against the federal officials under the Larson-Dugan Doctrine, the All Writs Act and *Bivens*.  Plaintiffs do not seek monetary damages against the federal Defendants.  Instead, they seek injunctive relief from this Court essentially ordering the Tenth Circuit Court of Appeals to vacate the dismissal of Plaintiffs' appeal.  This is consistent with Plaintiffs' propensity, under the leadership of Holli Lundahl, for collaterally attacking the judges who have adjudicated their cases when she has not obtained the relief they seek.  *See Quinn*, 67 P.3d at 1002.

### 1. The FTCA Claim Against the United States

The United States may not be sued under the FTCA for injunctive relief.  The FTCA makes the United States liable in money damages for the torts of its agents under certain conditions, but the FTCA does not submit the United States to injunctive relief.  *Westbay Steel, Inc. v. U.S.*, 970 F.2d 648, 651 (9th Cir. 1992).  Accordingly, the Court will dismiss Plaintiff's FTCA claim against the United States seeking injunctive relief.  Furthermore, the FTCA may act as a waiver of the United States' traditional sovereign immunity for certain torts committed by its employees, 28 U.S.C. § § 1346(b), 2674, but the Supreme Court has held that the FTCA does not waive the United States' sovereign immunity with respect to constitutional claims.  *See FDIC v. Meyer,* 510 U.S. 471, 478 (1994).  In this case, Plaintiffs have alleged unconstitutional conduct on part of the federal officials as the basis of their FTCA claim.  Such a claim may not be maintained under the FTCA.  Thus, those claims against the United States under the FTCA warrant dismissal.

### 2.  The Claims Against the Federal Officials

Just as the Court lacks jurisdiction over the Strong & Hanni Defendants, the Compton Defendants, and Wheeler, the Court similarly lacks jurisdiction over the federal officials. Plaintiffs' Complaint cites the nationwide service of process provision of RICO, 18 U.S.C. § 1965(b), the Unlawful Debt Collection Practices Act and the FTCA as a bases for personal jurisdiction.  Yet, no provision of the FTCA provides a basis for obtaining personal jurisdiction over the individual federal officials.  Furthermore, Plaintiffs have not alleged claims against the federal officials under RICO or the Unlawful Debt Collection Practices Act; thus, neither of those statutes provides a basis for obtaining jurisdiction over the federal officials.

Instead, Plaintiffs are responsible for establishing a prima facie case indicating that the federal officials have the requisite contacts with Idaho to satisfy due process.  Plaintiffs have not established either general or specific jurisdiction.  The analysis which applied to the Defendants previously discussed equally applies to the federal officials – Plaintiffs have failed to show that the federal officials have been conducting substantial and continuous activity in the forum state, thereby warranting the exercise of general jurisdiction.  Nor have Plaintiffs been able to establish specific jurisdiction by showing that the federal officials have purposely availed themselves of the privilege of conducting activities in the forum state, thereby invoking the benefits of that forum's laws, or that the claims arise out of the federal official's forum activities, or that the exercise of jurisdiction would not be reasonable.  *Myers v. Bennent Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).  Therefore, all claims against the federal officials must be dismissed for lack of jurisdiction.

### D. National General Insurance

Defendant National General Insurance Company ("National General") asks this Court to dismiss Plaintiffs' claims against it on the basis that Plaintiffs have failed to state a claim upon which relief may be granted.  In the alternative, National Insurance asks the Court to grant summary judgment in its favor on the basis that no genuine issue of material fact exists.  Specifically, National General asserts that the evidence clearly demonstrates: 1) none of the Plaintiffs, other than Christian Lundahl, can establish any contractual relationship with National General that could give rise to liability**;** 2) that National General did not insure Christian Lundahl during the relevant period alleged in the Complaint; and 3) any conceivable claim Plaintiffs might possess against Defendant National General is barred by the statute of limitations.

National General stands in a position distinct from the other Defendants in that it has not been involved in the previous litigation.  Plaintiffs' First Amended Complaint alludes to National General in only two different sentences of the Complaint.  Namely, the Complaint refers to National General as citizens of the state of Idaho and alleges that "Chris Lundahl also had an insurance policy protecting personal properties located at the site.  (*See* Exhibit "10" attached hereto.)"  The Complaint subsequently alludes to the fact that various carriers "wrongfully" failed to cover damage to the motor home allegedly caused when Defendant Compton fired shots into the motor home.  (Complaint ¶¶ 14 and 15).

National General contends that the Declaration attached as Exhibit 10 to the Complaint, which indicates that National General issued an insurance policy to Christian Lundahl on January 1, 1995, has been altered.  National General states that it has placed verification strips

with codes on each of the declaration pages it issues to insureds in order to verify their authenticity and protect against forgery.  National General further states that the coding established that the declaration page was actually issued on August 10, 1993, and not on January 1, 1995, as the declaration page now suggests.  The coding also indicates that the policy was issued in California, rather than in Utah as the address shown on Exhibit 10 of the declaration page represents.  In addition, National General points out that they would never issue a policy of this nature for a year as Exhibit 10 indicates; they only issue such a policy for a six-month policy period.  Furthermore,  National General maintains that it possesses no records showing that any claim was filed during the policy period.

Plaintiffs deny that Exhibit 10 is falsified; that the policy was cancelled in 1993; and that no claim was filed under the policy.  Instead, Plaintiffs argue that a policy was originally issued through "GMAC Insurance" and underwritten by MIC Insurance.  Plaintiffs maintain the policy was assigned to National General in 1995.  Plaintiffs further assert that Christian Lundahl filed a claim in August 1993, December 1993, in November 1994, and/or in September 1995.  Plaintiffs also maintain that a company known as "General Motors Acceptance Corporation" sent a notice to Christian Lundahl on November 30, 1999, denying any insurance policy coverage or benefits.

Rather than striking the Declarations of Holli Lundahl and Christian Lundahl for untimeliness and/or because they contain inadmissible conclusory statements based on hearsay and lacking foundation as National General suggests, although a more than valid basis exists in support of this suggestion,[6] the Court will construe the alleged "facts" contained in the

---

[6] Examples of Christian Lundahl's conclusory and unsupported statements submitted through their declarations include the following:

I dispute Paragraph 3 of Peggy O'Neil's Declaration because I do not believe that the policy or any

declarations in the light most favorably to Plaintiffs.  However, even accepting the Declarations

of Holli Lundahl and Christian Lundahl as true, the undisputed facts unequivocally show that

National General never issued any policy to Plaintiffs M.R. Christonson, H.T. Lundahl, Mari

Galhardo, K. Pontious, and Nellie Russo.  In the absence of an insurance contract, there can be

no special relationship between an insurer and an insured, and there can be no agreement to

which a covenant of good faith and fair dealing or breach of contract may attached.  *See, e.g.,*

*Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 778 p.2d 744 (1989).  Therefore, those

Plaintiffs other than Christian Lundahl cannot maintain either a contract claim against National

General for a breach of the implied covenant, or a tort claim for bad faith absent a contractual or

insurer/insured relationship with National General.  *Id.*  Therefore, any claims alleged by these

Plaintiffs shall be dismissed for failure to state a claim upon which relief may be granted.

---

supporting documents I originally purchased from General Motor's Acceptance Corporation in January, 1993, under its constituent underwriting company MIC General Insurance, were in fact preserved in the database of GMAC Insurance Company as of August 4, 1995,...It is my contention that the true GMAC policy I was issued in January, 1993, and attached hereto as Exhibit "1" was destroyed by GMAC at the time I made my second payoff demand. (Declaration of Christian Lundahl ¶ 4).

Paragraph 7 of Christian the Lundahl Declaration also reads:

I believe that Exhibit "B" was fabricated by GMAC in 1995 to obstruct my ability to collect on the insurance policy regarding my motor home.

Both these statement are clearly not based on personal knowledge, but instead are based upon belief and argument, and, therefore, are not admissible in evidence as required under Fed.R.Civ.P 56, which requires that "an opposing affidavit shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is confident to testify to matters stated therein."

Moreover, Christian Lundah's claims against National General are barred by the statute of limitations.  Christian Lundahl alleges he was wrongfully denied coverage by National General in 1995.  The applicable limitations period on a claim for bad faith is four years in the state of Utah. (*see* Utah Code § 78-12-25(3)); four years in the state of California (*see* California code of Civil Procedure § 343); and four years in the state of Idaho (*see* Idaho Code § 5-224).  Therefore, any claim for bad faith expired in 1999.   In addition, any claim for breach of an insurance contract carries a three-year limitations period in the state of Utah (*see* Utah Code § 31A-21-313(1)), a four-year limitations period in the state of California (*see* California Code of Civil Procedure § 337), and a five-year limitations period in the state of Idaho (*see* Idaho Code § 5-216).  Hence, a breach of insurance contract claim would have expired in 2000 at the very latest.  Furthermore, any claim for a RICO violation also carries a five-year limitations period, and would have expired in 2000 even assuming that Christian Lundahl could have remotely connected National General to any RICO conspiracy when National General was not a named defendant in either the prior lawsuits filed in California and Utah.  Accordingly, the Court will dismiss all claims against National General as well.

### III.
### Conclusion

In sum, the Court will dismiss with prejudice all claims against all Defendants because the claims are either barred by the doctrines of *res judicata* and/or the judicial proceedings privilege, or the Court lacks jurisdiction.  In addition, the Court will dismiss all claims against National General because any claims filed by Christian Lundahl and Holli Lundahl are barred by the statute of limitations.  Furthermore, any claims filed against National General by the

remaining Plaintiffs must be dismissed for failure to state a claim upon which relief may be granted because no insurer/insured relationship exists.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) CNA's Motion to Dismiss Case as Frivolous (Docket No. 21), filed on August 25, 2005, is GRANTED.

2) Strong & Hanni Defendants' Motion to Dismiss for Lack of Jurisdiction (Docket No. 22), filed on August 25, 2005, is GRANTED.

3) Motion to Dismiss by First American Title Insurance Co. (Docket No. 27), filed on August 30, 2005, is GRANTED.

4) Motion to Dismiss by Lawyers Title Insurance Corporation (Docket No. 39), filed on September 14, 2005, is GRANTED.

5) Motion to Dismiss by the Compton Defendants (Docket No. 52), filed on September 23, 2005, is GRANTED.

6) Motion to Dismiss filed by PAYCO General American Credits (Docket No. 56), filed on September 23, 2005, is GRANTED.

7) Motion to Dismiss Plaintiffs Mari Galhardo, K. Pontius, Nellie Russo, Christian Lundahl, and M.R. Christonson (Docket No. 74), filed on October 4, 2005, is DENIED AS MOOT.

8) Defendant National General Insurance Company's Motion to Dismiss and for Summary Judgment (Docket No. 84), filed on October 10, 2003, is GRANTED.

9) Plaintiffs' Ex Parte Motion to Strike Strong & Hanni's Rule 11 Motion to Dismiss Filed on Oct. 4, 2005 (Docket No. 92), filed on October 11, 2005, is DENIED.

10) Strong & Hanni's Motion to Strike Holli Lundahl's Affidavit (Docket No. 111), filed on October 14, 2005, is DENIED as MOOT.

11) CNA's Motion to Strike K. Pontious's Declaration (Docket No. 112), filed on October 14, 2005, is DENIED as MOOT.

12) CNA's Motion to Strike M.R. Christonson's Declaration (Docket No. 113), filed on October 14, 2005, is DENIED as MOOT.

13) CNA's Motion to Strike Holli Lundah's Supplemental Declaration (Docket No. 114), filed on October 14, 2005, is DENIED as MOOT.

14) CNA's Motion to Strike Holli Lundah's Declaration (Docket No. 114), filed on October 14, 2005, is DENIED as MOOT.

15) Plaintiff's Second Motion for Extension of Time (Docket No. 125), filed on November 3, 2005, is DENIED as MOOT.

16) Plaintiffs' Motion for Sanctions (Docket No. 127), filed on November 4, 2005, is DENIED.

17) Federal Defendants' Motion to Dismiss (Docket No. 131), filed on November 7, 2005, is GRANTED.

18) Plaintiff's Ex Parte Motion to Strike CNA's Reply Brief (Docket No. 136), filed on November 14, 2005, is DENIED.

19) Motion to Intervene (Docket No. 137), filed on November 16, 2005, is GRANTED. This motion was granted during oral argument on November 29, 2005.

20) Plaintiffs' Ex Parte Motion to Strike the Compton's Motion to Dismiss (Docket No. 143), filed on November 17, 2005, is DENIED.

21) Motion to Continue (Docket No. 161), filed on November 26, 2005, is DENIED as MOOT.

22) Plaintiffs' Verified Application to File Lost Record Nun Pro Tunc to December 8, 2005 (Docket No.191), filed on December 30, 2005, is GRANTED.

23) Plainitff's Motion for Hearing (Docket 193), filed on December 30, 2005, is DENIED.

24) Motion to Consolidate Case Nos. 1:05-CV-00145-MHW and 1:06-cv-00014-EJL (Docket No. 199), filed on January 23, 2006, is DENIED as MOOT.

DATED: February 15, 2006

Honorable Mikel H. Williams
United States Magistrate Judge